**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ANDRII BORUSHEVSKYI,

       Plaintiff,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

       Defendants.

No. 19-3034 (EGS/ZMF)

---

<u>**MEMORANDUM OPINION**</u>

## I.  Introduction

Plaintiff Andrii Borushevskyi ("Mr. Borushevskyi"), a Ukrainian citizen, filed a petition in September 2016 to immigrate with his family to the United States through the EB-5 Immigrant Investment Program. *See* Compl., ECF No. 1 at 1 ¶ 1, 7 ¶ 34.[1] Defendant United States Citizenship and Immigration Services ("USCIS") denied his petition and his later motion to reopen the denial, *see id.* at 11 ¶ 47, 12 ¶ 53; and the Administrative Appeals Office ("AAO") affirmed the denial, *see id.* at 14 ¶ 62.

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

On October 10, 2019, Mr. Borushevskyi filed this action against Defendants USCIS, Director Ur M. Jaddou ("Ms. Jaddou"),[2] and Immigrant Investor Program Office Chief Alissa Emmel ("Ms. Emmel")[3] (collectively, "Defendants") to obtain judicial review of the agency's decision to deny his petition. *See generally* Compl., ECF No. 1. Thereafter, the parties filed cross-motions for summary judgment. *See* Pl.'s Mot. Summ. J., ECF No. 10; Defs.' Cross-Mot. Summ. J., ECF No. 11. The Court referred this case to Magistrate Judge Faruqui for full case management, *see* Minute Order (Oct. 13, 2020); who has since issued a Report & Recommendation ("R. & R."), *see* R. & R., ECF No. 19.

Pending before the Court is Mr. Borushevskyi's Objections to Magistrate Judge Faruqui's R. & R. *See* Pl.'s Objs. Magistrate Judge's R. & R., ECF No. 20. Upon careful consideration of the R. & R., the objections and opposition thereto, the applicable law, and the entire record herein, the Court hereby **ADOPTS** the R. & R., ECF No. 19; **GRANTS** Defendants' Cross Motion for Summary Judgment, ECF No. 11; and **DENIES** Mr. Borushevskyi's Motion for Summary Judgment, ECF No. 10.

---

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes as defendant Ms. Jaddou, in place of former Acting Director Kenneth Cuccinelli. *See* Fed. R. Civ. P. 25(d).
[3] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes as defendant Ms. Emmel, in place of former Program Chief Sarah Kendall. *See id.*

2

## II.  Background

### A. Factual

Mr. Borushevskyi and his wife, Nataliia Borushevska ("Ms. Borushevska"), are Ukrainian citizens. J.A. of Administrative R. ("AR"), ECF No. 16-1 at 74, 279. Together, they operate a business importing and selling foreign kitchenware in Ukraine. *Id.* In 2016, they decided to immigrate to the United States with their children through the EB-5 immigrant investor visa program. *See id.* at 74.

To satisfy the requirements of the EB-5 visa application, Mr. Borushevskyi invested in a new business venture: a limited partnership called EB5 Capital Jobs Fund 19, L.P., which was sponsored by a USCIS-approved regional center called EB5 Capital California Regional Center. *Id.* at 6-8, 74, 99, 101-03, 105-06, 108. Partnership funds would be used to build a new Marriot dual brand hotel in Agoura Hills, California. *Id.* at 99, 101-03, 105-06, 108. Because this is a "targeted employment area," USCIS regulations required that Mr. Borushevskyi invest at least $500,000. 8 C.F.R. §§ 204.6(e), (f)(1)-(2).

Mr. Borushevskyi purportedly met this capital requirement by transferring $534,920 from his account with ABVL Bank to an escrow account for EB5 Capital Jobs Fund 19, L.P. AR, ECF No. 16-1 at 99, 101-03. This capital purportedly came from the

kitchenware business and, more specifically, was a reinvestment of funds that had been refunded from a cancelled contract. *See id.* That contract, signed in February 2014, had been for Mr. Borushevskyi to purchase $680,382 of kitchenware from a Panamanian company called Craft LMG S.A. ("Craft LMG"). *Id.* at 74, 76-86. He paid Craft LMG using two sources: (1) about $610,000 that he and his wife earned between 2009 and 2014, and (2) $70,000 from his line of credit with Alfa Bank. *Id.* at 74.

Days after Mr. Borushevskyi completed payment to Craft LMG, political turmoil descended on Ukraine. *See* Compl., ECF No. 1 at 6 ¶ 26. The country also entered a severe economic recession. *See id.* at 6 ¶ 27; Pl.'s Mot. Summ. J., ECF No. 10 at 7 & n.2. Because of these developments, he determined that it would be impossible to sell the imported kitchenware and therefore sought to modify, then cancel, his contract with Craft LMG. AR, ECF No. 16-1 at 74, 93-95. In September 2014, Mr. Borushevskyi and Craft LMG executed a cancellation agreement under which Craft LMG would refund the total contract price—a total of $680,382—by December 31, 2015. *Id.* Craft LMG completed this refund by July 11, 2016, *id.* at 97-99; and Mr. Borushevskyi deposited the refund at ABVL Bank in an account he opened for this purpose, *see id.* at 99, 101-03. On July 26, 2016, Mr. Borushevskyi transferred $534,920 from the ABVL account to an escrow account

4

for EB5 Capital Jobs Fund 19, L.P. to make the EB-5 investment.
*Id.*

On September 6, 2016, after making the EB-5 investment, Mr.
Borushevskyi filed his Form I-526 petition with USCIS. *Id.* at 2-
8. To accompany the petition, he filed a Memorandum on
Investor's Lawful Source of Funds to explain the above
narrative. *Id.* at 11-13. He also submitted evidence, pursuant to
8 C.F.R. § 204.6(j)(3), to document the source of his investment
funds. *See id.* at 34-37, 39-46, 48-55, 57-60, 76-86, 88-91, 93-
95, 97-99. Specifically, he submitted: (1) tax returns
documenting his and his wife's joint earnings; (2) an affidavit
from Mr. Borushevskyi, "explaining how he earned the funds used
for his investment and how he ultimately transferred his funds
to the qualifying U.S. business"; (3) copies of the sales
contract with Craft LMG, along with confirmation of payment and
the cancellation agreement; (4) copies of bank statements to
show the refund from Craft LMG to his ABVL bank account as well
as the transfer from the ABVL account to the escrow account for
EB5 Capital Jobs Fund 19, L.P.; (5) a copy of his line-of-credit
agreement with Alfa Bank; (6) copies of purchase/sale contracts
to show that he sold properties (gifted from his mother) in 2015
to repay the $70,000 he withdrew from his line of credit at Alfa
Bank; and (7) an affidavit from his mother to explain how she

earned the money to purchase the properties she had gifted to her son. *Id.*

On January 24, 2018, USCIS issued a Request for Evidence. *Id.* at 115-20. The agency explained that the record did not show that the funds Mr. Borushevskyi used to make his EB-5 investment came from lawful sources. *Id.* at 118. In response, Mr. Borushevskyi submitted additional evidence: (1) a copy of a certificate of registration with the Ukrainian government as an individual entrepreneur for the kitchenware business; (2) agreements and invoices documenting his and his wife's business activities from 2009-2013, including other contracts with Craft LMG; and (3) a certificate from Alfa Bank confirming payment and closure of the line of credit. *Id.* at 127-30, 132-250, 252-53.

On April 29, 2018, the agency issued a Notice of Intent to Deny his Form I-526 petition. *Id.* at 255-60. This Notice explained that Mr. Borushevskyi had not submitted evidence of "earnings from his business prior to the cancellation of his order and refund from Craft LMG" and that the tax statements he had submitted "do not provide lawful evidence of income earned." *Id.* at 259. The Notice also stated that he failed to document the payments on his credit line with Alfa Bank. *See id.*

Mr. Borushevskyi timely responded to the Notice of Intent to Deny. *See id.* at 262-66. Along with his response, he

6

submitted a second affidavit. *Id.* at 268-69. He explained to the
agency that he would not be able to submit the business records
requested because

> he used his line of credit with Alfa Bank as
> his main financing tool, drawing on the credit
> line when necessary to purchase inventory
> upfront, and repaying the credit line with the
> proceeds of sales. Mr. Borushevskyi would
> repay debt on the credit line in cash and
> receive cash receipts from the bank teller.
> But he only kept these receipts until he saw
> payment reflected on his credit balance—there
> was no reason for him to hold onto them
> thereafter. Moreover, because he used a credit
> line rather than a typical bank account, the
> bank was unable to issue detailed statements
> showing individual transactions.

Compl., ECF No. 1 at 10 ¶ 45. Mr. Borushevskyi attached
additional evidence with this affidavit: (1) a letter from Alfa
Bank to confirm that it does not provide statements of
individual transactions; (2) "further evidence of inventory" he
sold; (3) registration of the "Le Mage" brand, which he and his
wife used for the kitchenware business; and (4) photos to
document parts of the kitchenware business. AR, ECF No. 16-1 at
127-30, 132-250, 271, 273-77, 281-93, 318-29, 331, 335.

On July 12, 2018, USCIS denied Mr. Borushevskyi's petition
on the grounds that the record lacked sufficient evidence to
show that his investment funds were lawfully sourced. *See id.* at
295-302. This denial discussed the lack of documentary evidence

to support his claims as well as inconsistencies in the record. *See id.* One month later, Mr. Borushevskyi filed a motion to reopen the denial along with copies of five years' worth of bank statements from his personal account with Raiffeisen Bank Aval and profit/loss statements for 2009-2014. *Id.* at 313-79.

On October 10, 2018, USCIS denied the motion to reopen and affirmed its denial of the petition. *Id.* at 337-98. The agency again concluded that Mr. Borushevskyi had "[g]o[ne] on record without supporting documentary evidence." *Id.* at 341. USCIS explained that the bank statements were insufficient to establish the source of his funds, that the profit/loss statements showed insufficient profits, and that the tax records showed an insufficient accumulation of funds. *See id.*

Mr. Borushevskyi appealed USCIS's denial of the motion to reopen to the AAO on November 9, 2018. *Id.* at 356-67. The AAO denied the appeal on July 22, 2019. *Id.* at 381-85. In the denial, the AAO determined that he failed to adequately document his payment to Craft LMG for the cancelled contract. *See id.* The AAO also concluded that he had not submitted enough evidence that the money he exchanged with Craft LMG and used for his EB-5 investment came from his earnings and a $70,000 draw on his line of credit with Alfa Bank. *See id.*

### B. Procedural

Mr. Borushevskyi filed this action against USCIS, Director Jaddou, and Program Chief Emmel on October 10, 2019. *See generally* Compl., ECF No. 1. The parties filed cross-motions for summary judgment. *See* Pl.'s Mot. Summ. J., ECF No. 10; Defs.' Cross-Mot. Summ. J., ECF No. 11. Thereafter, the Court referred this action to Magistrate Judge Faruqui for full case management, up to but excluding trial pursuant to Local Civil Rule 72.2. *See* Minute Order (Oct. 13, 2020). On May 18, 2021, Magistrate Judge Faruqui issued his R. & R. recommending that the Court deny Mr. Borushevskyi's Motion for Summary Judgment and grant Defendants' Cross Motion for Summary Judgment. *See* R. & R., ECF No. 19 at 14.

Mr. Borushevskyi raises several objections to Magistrate Judge Faruqui's R. & R. *See generally* Pl.'s Objs. Magistrate Judge's R. & R. ("Pl.'s Objs."), ECF No. 20. Defendants responded to Mr. Borushevskyi's objections, *see* Defs.' Opp'n Pl.'s Objs. Magistrate Judge's R. & R. ("Defs.' Opp'n"), ECF No. 22; and Mr. Borushevskyi filed his reply brief, *see* Pl.'s Reply in Supp. of Objs. Magistrate Judge's R. & R. ("Pl.'s Reply"), ECF No. 23. The objections are ripe and ready for adjudication.

### III. Legal Standard

#### A. Objections to a Magistrate Judge's R. & R.

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has entered a recommended disposition. Fed. R. Civ. P. 72(b)(2). A district court "may accept, reject, or modify the recommended disposition." *Id.* 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). A district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R. & R.] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (citation omitted). "Under the clearly erroneous standard, the magistrate judge's decision is entitled to great deference" and "is clearly erroneous only if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." *Buie v. Dist. of Columbia*, No. CV 16-1920 (CKK), 2019 WL 4345712, at *3 (D.D.C. Sept. 12, 2019) (citation and internal quotation marks omitted).

Objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made

and the basis for the objection." LCvR 72.3(b). "[O]bjections
which merely rehash an argument presented and considered by the
magistrate judge are not properly objected to and are therefore
not entitled to de novo review." *Shurtleff v. EPA*, 991 F. Supp.
2d 1, 8 (D.D.C. 2013) (citation and internal quotation marks
omitted). The Court reviews Mr. Borushevskyi's objections *de
novo*.

### B. Summary Judgment

Summary judgment should be granted only if the moving party
has shown that there are no genuine issues of material fact and
that the moving party is entitled to judgment as a matter of
law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S.
317, 322-23 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d
989, 991-92 (D.C. Cir. 2002). In a case involving review of a
final agency action under the Administrative Procedure Act
("APA"), however, Rule 56(c)'s standard does not apply because
of the court's limited role in reviewing the administrative
record. *See N.C. Fisheries Ass'n v. Gutierrez*, 518 F. Supp. 2d
62, 79 (D.D.C. 2007).

Under the APA, it is the agency's role to resolve factual
issues and to arrive at a decision that is supported by the
administrative record, whereas "the function of the district
court is to determine whether or not as a matter of law the

evidence in the administrative record permitted the agency to
make the decision it did." *Stuttering Found. of Am. v. Springer*,
498 F. Supp. 2d 203, 207 (D.D.C. 2007) (citations omitted).
"Summary judgment thus serves as the mechanism for deciding, as
a matter of law, whether the agency action is supported by the
administrative record and otherwise consistent with the APA
standard of review." *Id.* (citing *Richards v. Immigr. &
Naturalization Serv.*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir.
1977)).

When reviewing agency action pursuant to the APA, the Court
must determine whether the challenged decision is, *inter alia*,
"arbitrary, capricious, an abuse of discretion, or otherwise not
in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of
statutory jurisdiction, authority, or limitations, or short of
statutory right," *id.* § 706(2)(C); or "without observance of
procedure required by law," *id.* § 706(2)(D). The arbitrary or
capricious provision, under Subsection 706(2)(A), "is a
catchall, picking up administrative misconduct not covered by
the other more specific paragraphs" of the APA. *Ass'n of Data
Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv.
Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984). The "scope of review
under the 'arbitrary and capricious' standard is narrow and a
court is not to substitute its judgment for that of the agency."

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Although this scope of review is deferential, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). In evaluating agency actions under the arbitrary and capricious standard, the court must be satisfied that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (citation and internal quotation marks omitted). Moreover, when an agency "has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (quoting *BellSouth Corp. v. FCC*, 162 F.3d 1215, 1222 (D.C. Cir. 1999)). In other words, "the agency must explain why it decided to act as it did." *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

## IV.  Analysis

### A. The Plain Language of the Regulations Support USCIS's Complete Path[4] Interpretation

Mr. Borushevskyi objects on the grounds that the plain language of the regulations does not support the "complete path" requirement. Pl.'s Objs., ECF No. 20 at 9.

"In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988) (citations omitted). The "fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

In 1990, Congress created the EB-5 Visa Program as one of five categories of employment-based immigration preferences to "create new employment for U.S. workers and to infuse new capital into the country." S. Rep. No. 101-55, at 21 (1989). In 1991, the Immigration and Naturalization Service ("INS")—USCIS' predecessor agency—promulgated regulations to implement the EB-5

---

[4] The Court refers to the complete path requirement but notes that USCIS referred to the "full path" in its decisions.

Program. *See* 8 C.F.R. § 204.6. Pursuant to these regulations, to be eligible for an EB-5 visa, an alien must "invest[]" a certain amount of "capital" in a "commercial enterprise" to "benefit the United States economy and create full-time employment for not fewer than [ten] United States citizens, United States nationals, or aliens lawfully admitted . . . ." 8 U.S.C. § 1153(b)(5)(A).

In establishing the program, Congress intended that the "processing of an individual visa not continue under this section if it becomes known to the Government that the money invested was obtained by the alien through other than legal means[.]" S. Rep. No. 101-55, at 21. Accordingly, to qualify as "capital," the invested asset must have been lawfully-obtained: "[a]ssets acquired, directly or indirectly, by unlawful means . . . shall not be considered capital." 8 C.F.R. § 204.6(e). In promulgating this rule in 1991, the INS informed the public that the definition of "capital" excluded assets "directly or indirectly" acquired by unlawful means to effectuate this specific congressional intent. *See* 56 Fed. Reg. 60,893, 60,902 (Nov. 29, 1991) (citing S. Rep. No. 101-55, at 21).

To demonstrate that the "capital" was "obtained through lawful means," the regulations set forth the types of financial documents, that, "as applicable," the foreign investor must

15

include with his I-526 petition. *See* 8 C.F.R. §§ 204.6(j)(3)(i-iv)(listing (i) foreign business registration records, (ii) corporate, partnership, and personal tax returns filed within five years of filing the petition, (iii) evidence identifying other sources of capital, or (iv) certified copies of judgments and evidence of all pending criminal, civil, or administrative actions involving monetary judgments against the investor within fifteen years of filing the petition). In promulgating this rule in 1991, the INS informed the public that "[t]his additional evidentiary requirement carries out Congress's instruction that 'processing of an individual visa not continue under this section if it becomes known to the Government that the money invested was obtained by the alien through other than legal means (such as money received through the sale of illegal drugs).'" 56 Fed. Reg. at 60,904 (citing S. Rep. No. 101-55, at 21).

Mr. Borushevskyi argues that the plain language of the regulations do not support the "complete path" requirement because "[t]he regulations make no mention of an absolute requirement that an applicant submit evidence tracing the 'complete path' of investments funds from the time of their acquisition to the time of investment—instead, they embody the agency's reasonable assessment that an applicant's EB-5 investment funds 'more likely than not' will have derived from

lawful sources if business records and/or tax returns demonstrate that the investor earned sufficient capital to fund the EB-5 investment." Pl.'s Objs., ECF No. 20 at 9.

Mr. Borushevskyi's reading of the regulations are at odds with the plain text of the regulations and broader context of the statute they implement. 8 C.F.R. § 204.6(e) provides that "[a]ssets acquired, directly or indirectly, by unlawful means . . . shall not be considered capital." 8 C.F.R. § 204.6(e). 8 C.F.R. § 204.6(j)(3) sets forth types of documentation the petitioner needs to submit with the petition to demonstrate that the "capital [was] obtained through lawful means." *Id*. § 204.6(j)(3). Through this documentation, the petitioner provides evidence of the source of the capital. *See id*. These regulations are framed by the broad context of the statute, with regard to which Congress intended that "processing of an individual visa not continue under this section if it becomes known to the Government that the money invested was obtained by the alien through other than legal means[.]" S. Rep. No. 101-55, at 21. Accordingly, the requirement that the capital be lawfully obtained and that the visa not be processed once the Government becomes aware that the capital was not lawfully obtained support the requirement that the alien identify the source of the funds, which is demonstrated through documentation evidencing the complete path of the funds. For these reasons, the plain

17

language of the regulations support USCIS's complete path
interpretation.

### B. If the Regulations Are Genuinely Ambiguous, the Agency's Interpretation Is Reasonable and Is Entitled to Deference

Mr. Borushevskyi argues that Magistrate Judge Faruqui
improperly deferred to the "complete path" requirement but
presents no argument as to why the regulations at issue are
"genuinely ambiguous." Pl.'s Objs., ECF No. 20 at 10-13. The
Court will therefore assume that the regulations are "genuinely
ambiguous" in order to address Mr. Borushevskyi's argument—
whether USCIS's interpretation is entitled to deference.

"Courts defer to an agency's interpretation of its own
regulation if the regulation in question is 'genuinely
ambiguous' and if the agency's reading is reasonable." *Doe v.
Sec. & Exch. Comm'n*, 28 F.4th 1306, 1311 (D.C. Cir. 2022) (per
curiam) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415-16
(2019)). Where the regulation is ambiguous, the interpretation
[1] "must be the agency's authoritative or official position,"
[2] "implicate its substantive expertise," and [3] "reflect fair
and considered judgment to receive deference." *Id.* at 1311
(internal quotation marks omitted) (quoting *Kisor*, 139 S. Ct. at
2416-18). For the reasons explained below, if in the

alternative, the regulations are genuinely ambiguous, the Court concludes that the agency's interpretation warrants deference.

First, USCIS's "complete path" interpretation of the regulations is its authoritative position as explained in three 1998 precedential decisions. In *Matter of Izummi*, the agency applied the regulations at issue here to determine whether the petitioner demonstrated that he had obtained the capital through lawful means. *Matter of Izummi*, 22 I. & N. Dec. 169 (1998). The agency denied petitioner's petition because, among other things, he had failed to "document[] the path of the funds" and so had failed to meet his burden. *Id*. at 195. In *Matter of Ho,* the agency again applied the regulations at issue here to determine whether the petitioner demonstrated that he had obtained the capital through lawful means. *Matter of Ho*, 22 I. & N. Dec. 206 (1998). The agency denied petitioner's petition because, among other things, he had "failed to establish the source of the funds" and so had failed to meet his burden. *Id.* at 211. Finally, in *Matter of Soffici*, the agency again applied the regulations at issue here to determine whether the petitioner demonstrated that he had obtained the capital lawfully. *Matter of Soffici*, 22 I. & N. Dec. 158 (1998). The agency denied petitioner's petition because, among other things, he had failed to demonstrate that the funds were his own and were obtained through lawful means, and so had failed to meet his burden of

presenting clear documentary evidence of the source of the funds. *Id*. at 158, 165.

Mr. Borushevskyi disputes that these agency decisions support the "complete path" requirement because "in none of the cited decisions did the agency hold that investors must always trace the complete path of every EB-5 investment dollar from initial acquisition to final investment." Pl.'s Reply, ECF No. 23 at 5. The Court is unpersuaded by this argument. Taken together, these decisions require the investor to establish the source of the funds—which can be demonstrated by documenting the complete path of the funds—to demonstrate that the funds were obtained through lawful means. Furthermore, other courts have recognized the "complete path" as the authoritative agency position. *See, e.g., Sadeghzadeh v. USCIS*, 322 F. Supp. 3d 12, 17-18 (D.D.C. 2018) ("The [Administrative Appeals Office's] decision correctly states that, under governing regulations and precedent, an applicant must document the complete path of her investment funds." (citing 8 C.F.R. 204.6(j)(3); *Izummi*, 22 I. & N. Dec. at 195)); *Zhang v. Nielsen*, No. CV 18-9799, 2019 WL 5303276, at *7-8 (C.D. Cal. Oct. 17, 2019) ("As interpreted by USCIS, EB-5 investors cannot satisfy the requirements of 8 C.F.R. 204.6(j)(3) without sufficiently documenting the source and path of their investment funds." (citing *Izummi*, 22 I. & N. at 195)); *Spencer Enters., Inc., v. United States*, 229 F. Supp.

2d 1025, 1039-1040 (E.D. Cal. 2001) (petitioner "must present clear documentary evidence of the source of funds she invests, and that the funds are her own" (citing *Soffici*, 22 I. & N. Dec. 158; *Ho*, 22 I. & N. Dec. 206)), *aff'd*, 345 F.3d 683 (9th Cir. 2003). "These are hypertechnical requirements to serve a valid government interest; i.e., to confirm that the funds utilized in the program are not of suspect origin." *Spencer Enters., Inc.*, 229 F. Supp. 2d at 1040. USCIS's "complete path" interpretation of the regulations is therefore its authoritative position.

Second, USCIS's interpretation "implicate[s] its substantive expertise" in implementing the EB-5 visa program. *Kisor*, 139 S. Ct. at 2417. Defendants argue that this interpretation involves USCIS's expertise because "Congress explicitly bestowed upon the Secretary of Homeland Security the broad authority (as exercised through USCIS, a sub-agency of DHS) to administer and enforce the EB-5 program and to 'establish such regulations' and 'perform such other acts' necessary for carrying out its authority under the INA." Defs.' Opp'n, ECF No. 22 at 25 (quoting 8 U.S.C. §§ 1103(a)(1), (3)). Mr. Borushevskyi does not deny agency expertise here. *See generally* Pl.'s Objs., ECF No. 20; Pl.'s Reply, ECF No. 23. "Generally, agencies have a nuanced understanding of the regulations they administer." *Kisor*, 139 S. Ct. at 2417 (citation and internal quotation marks omitted). The review of

21

evidence to support immigration visa applications "is part and
parcel of the [USCIS's] statutorily assigned duties." *Doe*, 28
F.4th at 1315; *see also* 8 U.S.C. §§ 1103(a)(1), (3); *Yue Zhang
v. USCIS*, No. CV 17-706 (EGS), 2017 WL 3190559, at *2 (D.D.C.
July 26, 2017). Interpretation of the regulations therefore
implicates USCIS's policy expertise.

Finally, USCIS's interpretation "reflects [its] fair and
considered judgment." *Kisor*, 139 S. Ct. at 2417 (citations and
internal quotation marks omitted). Courts "should decline to
defer to a merely convenient litigating position or post hoc
rationalizatio[n] advanced to defend past agency action against
attack." *Id.* (citation and internal quotation marks omitted).
Courts should also decline to defer "to a new interpretation,
whether or not introduced in litigation, that creates unfair
surprise to regulated parties." *Id.* at 2418 (citation and
internal quotation marks omitted).

As explained above, USCIS's interpretation is not a new
one. It is not a convenient litigation position or a post hoc
rationalization. Rather, it was articulated in USCIS
precedential decisions in 1998, and the interpretation has been
recognized by district courts for nearly the same amount of
time. Mr. Borushevskyi contends that imposition of USCIS's
interpretation here constitutes "unfair surprise" because USCIS

is "springing this requirement on investors *after* they have already saved their capital and made their EB-5 investment." Pl.'s Objs., ECF No. 20 at 12-13. However, since USCIS's interpretation is not a new one, there is no unfair surprise to Mr. Borushevkyi. USCIS's interpretation therefore reflects its fair and considered judgment.

Accordingly, if the regulations are genuinely ambiguous, the agency's interpretation is reasonable and is entitled to deference.

For all these reasons, the Court **ADOPTS** the R. &. R. as to Magistrate Judge Faruqui's deferral to the "complete path" requirement.

### C. Magistrate Judge Faruqui Correctly Determined That USCIS's Decision is Supported by Substantial Evidence

Mr. Borushevskyi objects to the R. &. R. on the grounds that Magistrate Judge Faruqui erred in concluding that USCIS's denial of his petition is supported by substantial evidence. *See* Pl.'s Objs., ECF No. 20 at 16. First, he claims that "the Magistrate Judge conceded that 'there was not substantial evidence that [his] funds were unlawfully obtained,'" *id.* at 17 (quoting R. & R., ECF No. 19 at 12); and that this "finding dooms the agency's decision," *id.* Second, he argues that Magistrate Judge Faruqui "confuse[d] the substantial-evidence

standard for the burden of production," *id.*; and misapplied precedent from the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), *see id.* Third, Mr. Borushevskyi takes issue with Magistrate Judge Faruqui's suggestion that a standard other than the substantial-evidence standard might apply in USCIS proceedings. *See id.* at 18.

Defendants respond that Mr. Borushevskyi has "mischaracterize[ed] the findings in the R & R." with respect to the substantial-evidence standard. Defs.' Opp'n, ECF No. 22 at 29. They argue that Magistrate Judge Faruqui concluded that Mr. Borushevskyi "failed to satisfy his burden of proof" in the USCIS proceedings, *id.*; such that "there was simply insufficient objective evidence to determine one way or the other the lawful sourcing of [his] funds," *id.* at 30 (quoting R. & R., ECF No. 19 at 12-13). They add that the agency "affirmatively identif[ied]" evidence that contradicted Mr. Borushevskyi's statements about the source of his investment funds. *Id.* (quoting R. & R., ECF No. 19 at 13). Therefore, Defendants argue, Magistrate Judge Faruqui "correctly found that USCIS is not required to 'point to affirmative evidence to clear the substantial evidence hurdle.'" *Id.* (quoting R. & R., ECF No. 19 at 12).

In his reply briefing, Mr. Borushevskyi reiterates that he met his burden of production by submitting evidence required by

USCIS regulation. *See* Pl.'s Reply, ECF No. 23 at 8. Because he met his burden, he contends, "[t]he onus then shifted to USCIS to apply the appropriate standard of proof (here, preponderance of the evidence)." *Id.* at 9. He explains that the evidence showed that his funds were lawfully sourced, and therefore Magistrate Judge Faruqui erred in concluding that the agency's findings are supported by substantial evidence. *See id.*

The Court reviews agency decisions under the substantial-evidence standard. *See Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021). Under this standard, the Court "looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alterations, citation, and internal quotation marks omitted). This evidentiary bar "is not high," *id.*; it "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence," *Saunders*, 6 F.4th at 4 (quoting *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004)). Thus, the Court "must carefully scrutinize the entire record" but "assess only whether" the agency's decision "is based on substantial evidence." *Id.* (quoting *Butler*, 353 F.3d at 999).

The D.C. Circuit has explained that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder." *Sec'y*

*of Lab. v. Knight Hawk Coal, LLC*, 991 F.3d 1297, 1308 (D.C. Cir. 2021) (quoting *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008)). This Court "may not reject reasonable findings and conclusions, even if [it] would have weighed the evidence differently," *id.* (quoting *Cumberland Coal Res., LP v. Fed. Mine Safety & Health Rev. Comm'n*, 717 F.3d 1020, 1028 (D.C. Cir. 2013)); and must affirm the decision if "a theoretical 'reasonable factfinder' could have reached the conclusions actually reached by the [agency]," *id.* (quoting *Sec'y of Lab. v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1104 (D.C. Cir. 1998)). "Reversal of an agency decision under [the substantial-evidence] standard is rare." *Astrue*, 529 F.3d at 1185.

In its final AAO decision, USCIS concluded that Mr. Borushevskyi "ha[d] not established that the funds used to acquire the dishes were lawfully sourced." AR, ECF No. 16-1 at 385. The agency made three findings to support this decision: (1) there was no documentation, such as bank statements, to show his payment to Craft LMG; (2) the bank statements do not show that he had sufficient funds to pay Craft LMG and do not show any withdrawal at the time of that payment; and (3) there was no documentation to show that he used the line of credit to pay Craft LMG. *See id.* at 384-85. In other words, USCIS had no

26

objective evidence in the record to show that Mr. Borushevskyi possessed the funds used to pay Craft LMG.

As Magistrate Judge Faruqui explained in the R. & R., the Court concludes that USCIS had more than "a mere scintilla" of evidence to support its conclusion. The agency reviewed evidence regarding the $610,000 Mr. Borushevskyi paid to Craft LMG and the $70,000 credit line he obtained from Alfa Bank. As to the first source of funds, "USCIS affirmatively identified bank statements apparently contradicting Mr. Borushevskyi's explanation of the path of the funds" in his affidavits. R. & R., ECF No. 19 at 13; *see also* AR, ECF No. 16-1 at 384. The bank statements[5] showed that he did not have the $610,000 he paid to Craft LMG in February 2014 and that he did not withdraw $610,000 from his account at the time of the first Craft LMG transaction. *See* R. & R., ECF No. 19 at 13; *see also* AR, ECF No. 16-1 at 384-85. As to the second source of funds, Mr. Borushevskyi's evidence showed transactions related to the credit line but did "not show a transfer of funds to himself from the line of credit to pay Craft LMG or from himself to the line of credit to pay it off later." R. & R., ECF No. 19 at 13; *see also* AR, ECF No. 16-1 at 384-85. Because Mr. Borushevskyi submitted "contradict[ory]"

---

[5] These are bank statements from Mr. Borushevskyi's account at Raiffeisen Bank Aval. *See* AR, ECF No. 16-1 at 384 n.10.

and "inadequate[]" documentation, R. & R., ECF No. 19 at 13–14;
USCIS had substantial evidence to support its determination.

This situation mirrors that of *Sadeghzadeh* and *Matter of
Izummi*, where the agency had perhaps even less—"no record"
demonstrating that the initial funds belonged to the EB-5
applicant.[6] *Sadeghzadeh*, 322 F. Supp. 3d at 18; *Izummi*, 22 I. &
N. Dec. at 195. Given the lack of record evidence about the
origin of the funds Mr. Borushevskyi used to pay Craft LMG for
the original sales contract, the Court concludes that the
agency's determination is supported by substantial evidence.

Contrary to Mr. Borushevskyi's argument, *see* Pl.'s Objs.,
ECF No. 20 at 17; this decision aligns with D.C. Circuit
precedent. Mr. Borushevskyi cites *Comcast Cable Communications,
LLC v. F.C.C.*, 717 F.3d 982 (D.C. Cir. 2013), but the Circuit
there held only that where the agency points to "no evidence,"
its decision is not supported by substantial evidence. *See* 717
F.3d at 987. Here, USCIS has pointed to evidence: Mr.
Borushevskyi's bank statements from 2009 to 2014, which he
submitted "as evidence of 'income from sale of tableware,'" but
which show insufficient funds for a payment to Craft LMG and no
withdrawals or transfers. AR, ECF No. 16-1 at 384. The agency

---

[6] The Court acknowledges that Mr. Borushevskyi submitted
affidavits and other corroborative evidence, such as his sales
contract and confirmation of payment with Craft LMG, here.

also looked to the other evidence he submitted, such as the
sales contract with Craft LMG, his tax documents, and a letter
from Alfa Bank, and found that this documentation did not
establish what funds he used to pay Craft LMG. *See id.* at 384-
85. Mr. Borushevskyi's situation is therefore distinct from the
D.C. Circuit cases he cites, which dispose of claims where the
agency had "no evidence" in the record. *See Comcast*, 717 F.3d at
987; *Adtranz ABB Daimler-Benz Transp., N.A., Inc. v. NLRB*, 253
F.3d 19, 28 (D.C. Cir. 2001); *Smalls v. Shalala*, 996 F.2d 413,
417 (D.C. Cir. 1993).

Finally, the Court addresses Mr. Borushevskyi's claim that
he met his burden of production by producing evidence required
by USCIS regulations. *See* Pl.'s Reply, ECF No. 23 at 8. This
argument misunderstands his burden. The agency has repeatedly
explained that "a petitioner or applicant in administrative
immigration proceedings must prove by a preponderance of
evidence that he or she is eligible for the benefit sought."
*Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (2010) (citations
omitted). "In evaluating the evidence," the agency makes its
determination "not by the quantity of evidence alone but by its
quality." *Id.* at 376 (citation and internal quotation marks
omitted). "If the [agency] can articulate a material doubt, it
is appropriate for the [agency] to either request additional
evidence or, if that doubt leads the [agency] to believe that

the claim is probably not true, deny the application or petition." *Id.* Contrary to Mr. Borushevskyi's argument, he satisfies his burden in USCIS proceedings by submitting evidence that, when examined, shows that his funds are more likely than not lawfully sourced. He must do more than submit documents listed in agency regulations.

Accordingly, the Court concludes that the agency's decision is supported by substantial evidence and **ADOPTS** the R. & R. as to Magistrate Judge Faruqui's determination of the same.

> ### D. Magistrate Judge Faruqui Did Not Violate the *Chenery* Doctrine by Affirming USCIS's Decision on a Ground the Agency Never Advanced

Mr. Borushevskyi objects to the R. &. R. on the grounds that Magistrate Judge Faruqui violated the *Chenery* doctrine. Pl.'s Objs., ECF No. 20 at 13. The *Chenery* doctrine establishes that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 95 (1943). "'[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained,' so that the reviewing court can be assured the agency 'has exercised the discretion with which Congress has empowered it.'" *Sears, Roebuck & Co. v. U.S. Postal*

*Serv.*, 844 F.3d 260, 266 (D.C. Cir. 2016) (quoting *Chenery*, 318 U.S. at 94-95). Thus, a federal court reviewing an administrative order must judge the order on the grounds that the agency discloses in that order. *Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 1 F.4th 1120, 1127 (D.C. Cir. 2021) (quoting *Chenery*, 318 U.S. at 87).

Mr. Borushevskyi argues that this Court should reject proposed findings in the R. & R. upon which the agency did not rely in making its decision. Pl.'s Objs., ECF No. 20 at 14. First, he argues that Magistrate Judge Faruqui "improperly excused USCIS's failure to fully weigh and consider the two affidavits [he] submitted, which explain in detail the complete path of his investment funds," *id.*; contending that USCIS's denial decision does not indicate that it weighed the affidavits, *see id*. (citing AR, ECF No. 16-1 at 382-85). However, like the agency, Magistrate Judge Faruqui concluded that Mr. Borushevskyi "fail[ed] on the evidentiary showing" necessary to "document the originating step in the transaction that linked his claimed sources of funds to his investment."[7] R.

---

[7] The originating step in the path of funds here is Mr. Borushevskyi's payment to Craft LMG, which Craft LMG later refunded per the cancellation agreement. *See* AR, ECF No. 16-1 at 384. "An intermediary step that is not a meaningful transaction, *i.e.*, a refund payment, cannot serve as a substitute for the point of origin inquiry." R. & R., ECF No. 19 at 10 (citing *Zhang*, 2019 WL 5303276, at *7).

& R., ECF No. 19 at 10 (citing AR, ECF No. 16-1 at 383-84); AR, ECF No. 16-1 at 384 (AAO concluded that Mr. Borushevskyi had not submitted "adequate documentation . . . of the Petitioner's payment to Craft LMG S.A., such as bank statements showing a withdrawal or transfer of funds belonging to him, or otherwise illustrating the source of the money provided to that company"). Magistrate Judge Faruqui explained that the affidavit that Mr. Borushevskyi submitted is not "objective documentation" of his payment to Craft LMG, R. & R., ECF No. 19 at 11; which Mr. Borushevskyi conceded in his summary-judgment briefing, *see* Pl.'s Mot. Summ. J., ECF No. 10 at 18; and which he does not dispute now in his objections to the R. & R, *see generally* Pl.'s Objs., ECF No. 20; Pl.'s Reply, ECF No. 23.

Mr. Borushevskyi points to the language in the R. & R. that the affidavit was "entitled to consideration." Pl.'s Objs., ECF No. 20 at 14 (quoting R. & R., ECF No. 19 at 11). As Defendants point out, however, Mr. Borushevskyi has taken that phrase out of context. *See* Defs.' Opp'n, ECF No. 22 at 28. Magistrate Judge Faruqui admonished USCIS *for its summary-judgment briefing* for completely ignoring the fact that Mr. Borushevskyi had submitted an affidavit:[8] "USCIS goes too far in stating that Mr.

---

[8] Magistrate Judge Faruqui discusses a singular affidavit, but his discussion encompasses both the original affidavit Mr. Borushevksyi submitted with his application and the supplemental

Borushevskyi has simply gone on record and elected not to submit a single piece of corroborating documentation to show the source of his funds." R. & R., ECF No. 19 at 11 (citation and internal quotation marks omitted). Magistrate Judge Faruqui clarified that the affidavit was "entitled to consideration" because it was "corroborate[d]" by "evidence of a lawful dishware business, affidavits from the bank, and receipt from Craft LMG." *Id.*

Furthermore, Mr. Borushevskyi's objection is without merit because Magistrate Judge Faruqui did not weigh the affidavit any differently than did the agency. In its decision to deny Mr. Borushevskyi's motion to reopen, USCIS reviewed the affidavits and explained that "[g]oing on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. Bank letters or *statements corroborating the deposit of funds* by themselves are insufficient." *See* AR, ECF No. 16-1 at 341 (emphasis added); *see also id.* at 300 (USCIS denial of petition). The AAO affirmed this determination in its statement of the law. *See id.* at 383 ("Bank letters or statements corroborating the deposit of funds by themselves are insufficient."). Magistrate Judge Faruqui did not re-weigh the evidence or "substitute [his] judgment for that of the agency." *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43.

---

affidavit he submitted with his response to USCIS's Notice of Intent to Deny.

Rather, like USCIS, he determined that the affidavit did not meet the required evidentiary showing because it "merely corroborate[d]" that Mr. Borushevskyi paid Craft LMG. R. & R., ECF No. 19 at 11. And because both Magistrate Judge Faruqui and the agency recognized that the affidavit is per se insufficient to show the originating step of the fund transfer; neither dedicated any time reviewing the strength of Mr. Borushevskyi's assertions in it. This treatment of the affidavit therefore complies with *Chenery*'s command that the court judge an agency order on the grounds disclosed by the agency. *See Chenery*, 318 U.S. at 87.

Mr. Borushevskyi also takes issue with Magistrate Judge Faruqui's additional commentary on what evidence would have satisfied the agency's inquiry. *See* Pl.'s Objs., ECF No. 20 at 15-16; R. &. R., ECF No. 19 at 11-12. He claims that Magistrate Judge Faruqui "suggest[s] that Mr. Borushevskyi could prove that he paid for the purchase contract with Craft LM[G] *only* by producing 'personal bank statements.'" Pl.'s Objs., ECF No. 20 at 15 (emphasis added). But this is not what the R. & R. states. Magistrate Judge Faruqui explained that "bank account statements showing the accumulation of his earnings over the prior five years and showing a withdrawal or withdrawals in February 2014 totaling $610,000 . . . would have linked [Mr. Borushevskyi's] lawful income to the returned funds." *Id.* at 11. This is merely

a suggestion of what evidence would have cleared the evidentiary bar. Significantly, this is also what USCIS described in its final order. There, the AAO considered Mr. Borushevskyi's "assertion that accumulated earnings constituted a source of the funds" and reviewed the record, including bank statements from the previous five years totaling less than the EB-5 investment. AR, ECF No. 16-1 at 384. On this evidentiary review, the AAO concluded that he "ha[d] not submitted bank statements . . . or provided any other documentation to corroborate his assertion regarding the amount of their retained accumulated earnings." *Id.* Magistrate Judge Faruqui discussed the possibility of bank statement evidence exactly as the agency did and therefore committed no *Chenery* violation as to this (lack of) evidence.

Finally, Mr. Borushevskyi objects to Magistrate Judge Faruqui's statement that the former's proof of income is "particularly weak" because "it leaves the agency to utter guess work as to whether their [living] expenses outstripped" the couple's earnings less the EB-5 investment. R. & R., ECF No. 19 at 12. Mr. Borushevskyi argues that the Court may not rely on this theory because "the agency never requested such information from Mr. Borushevskyi, nor did it rely on the lack of such evidence as a ground for denial." Pl.'s Objs., ECF No. 20 at 15 (emphasis omitted). However, Mr. Borushevskyi again takes this statement out of context. Magistrate Judge Faruqui was

responding to and rejecting Mr. Borushevskyi's argument that "proof of sufficient income could support a finding that the Petitioner used lawfully obtained funds for their investment alongside documentation of the complete path of funds." R. & R., ECF No. 19 at 12. Magistrate Judge Faruqui did not recommend affirming the AAO decision on this ground. *See id.*

## V.   Conclusion

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Faruqui's R. & R., *see* ECF No. 19; **GRANTS** Defendants' Cross Motion for Summary Judgment, *see* ECF No. 11; and **DENIES** Mr. Borushevskyi's Motion for Summary Judgment, *see* ECF No. 10.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **March 27, 2023**